IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL SIMS,

    Plaintiff,

v.                                                                                                          CIV 06-474 JH/CEG

MELISSA VILLANUEVA, VINCENT
HORTON, K. BRODIE, SUSAN
ROBINSON, and DON DOUGLAS,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Melissa Villanueva ("Villanueva"), Vincent Horton ("Horton"), and K. Brodie's ("Brodie") Motion for Summary Judgment.[1] *See Doc. 23.* Plaintiff, Michael Sims ("Sims"), is proceeding *pro se, in forma pauperis*, and has brought this civil rights action under 42 U.S.C. § 1983. His Civil Rights Complaint alleges that Villanueva, Horton, and Brodie retaliated against him in violation of the First Amendment and were negligent in violation of state law. *See Doc. 1.* His Civil Rights Complaint and his amended complaint also allege that medical administrators Susan Robinson and Don Douglas denied him medical care. *See Docs. 1, 18.* My proposed findings and recommended disposition, however, *only addresses* the retaliation and negligence claims brought against Villanueva, Horton, and Brodie (hereinafter "Correctional Facility Defendants"). For the reasons below, I recommend that the Correctional Facility

---

[1] Sims filed a response to the motion for summary judgment and the Defendants filed a reply. *See Docs. 28, 30.* All citation to "Exhibits," unless otherwise noted, are to those attached to the Defendants' Motion for Summary Judgment, which was docketed as Document 23.

Defendants' Motion for Summary Judgment be granted and that Villanueva, Horton, and Brodie be dismissed as parties to this action.

## **Factual and Procedural Background**

Sims, an inmate, filed this lawsuit on June 5, 2005. *See Doc. 1*. In his Original Civil Rights Complaint, he alleges that the Correctional Facility Defendants retaliated against him for filing an informal complaint against Villanueva because he has: (i) lost his job without cause, (ii) been denied jobs or job changes by Villanueva without cause or reason, (iii) been the subject of disciplinary actions, and (iv) been placed in pre-hearing detention.[2] *Id*. at 3. Sims also alleges that the Defendants were negligent, however he lists no supporting facts for this allegation. *Id.* at 1.

The alleged events which give rise to this lawsuit occurred while Sims was incarcerated at the Lea County Correctional Facility ("LCCF") in Hobbs, New Mexico. On August 22, 2005, Sims was transferred to LCCF. *See Ex. A*. On September 8, 2005, Sims submitted an Inmate Job Application for Skilled or Security Sensitive Jobs. *See Ex. B*. Sims wanted to work as a kitchen porter. *Id*.

On September 9, 2005, Sims met with Villanueva, the Inmate Employment Coordinator at LCCF, to discuss his job application. *See Exs. C, D, E*. Villanueva informed Sims that he could not be placed in the kitchen until he was medically cleared, and, as result, he would be assigned to a pod porter position. *See Exs. C, D, P, and Q*. Upon hearing this, Sims became angry and began arguing with Villanueva. *Id*. Villanueva ordered him to leave her office. *Id*. He did so,

---

[2] Sims filed an amended complaint, however the amended complaint does not address the claims of retaliation or negligence. *See Doc. 18*.

but returned, without permission, two more times.  *Id*.  On his third trip to Villanueva's office, Sims was warned by the Assistant Director of Classification that if he did not leave immediately, he would be written up.  *See Ex. E*.

On September 12, 2005, Sims wrote a letter to Villanueva which, in its entirety, states:

> First and foremost allow me to apologize for my conduct and behavior on Friday, September 9, 2005.  Moments ago I talked with Nurse Archer and review of my medical file after request to be seen for medical clearance as you, Major Horton and myself discuss[sic] on 9-9-05.  I am clear of hepititis[sic] and HIV and will send you da[sic] penwork[sic] this week.  Now, I am ready for kitchen work assignment as discussed with Major Horton.  Please schedule and/or make needed paperwork if you'll be so kind.

*Ex. G*.   After obtaining Sims's medical clearance, Villanueva reviewed Sims's file.  *See Exs. C, P*. Sims's file contained, among other things, information that Sims was not a model inmate and that on two occasions he had been caught with shanks.  *Id*.  Because inmates that work in the kitchen have access to sharp utensils and minimal supervision, Villanueva, on September 15, 2005, did not recommend that Sims be placed in the kitchen.  *See Exs. B, C, P*.  Major Horton, however, overrode Villanueva's recommendation, and Sims began working in the kitchen on September 19, 2005.  *See Exs. B, C, H, P*.

On September 20, 2005, one day after Sims had started working in the kitchen, Sims came to Villanueva's office, without permission, and demanded to be removed from the kitchen.  *See Exs. C, P, Q*.  Villanueva explained to Sims that he had to work in the kitchen for ninety days before being considered for voluntary re-assignment.  *Id*.  Upon hearing this, Sims became irate and began swearing at Villanueva.  *Id*.

On September 21, 2005, Villanueva received an email from the kitchen supervisor, asking that Sims be placed on the day shift because only one supervisor worked at night.  *See Exs. C, P*.

Later that same day, Villanueva, while walking in a hallway, witnessed Sims arguing with Linda Murphy, the Accountability Officer, about being switched to the day shift. *See Exs. P, Q*. When Villanueva passed by Sims in the hallway, he stopped arguing with Linda Murphy and began to stare at Villanueva with his teeth and fists clinched. *See Exs. K, P, Q*. When Villanueva attempted to speak to Sims, he would not respond. *Id*. Concerned for her safety, Villanueva retreated to her office and called security. *Id.*

On September 27, 2005, Villanueva received notice from the medical staff that Sims was no longer cleared for food service. *See Ex. C*. In order to protect inmate privacy, Villanueva was not told why Sims was no longer cleared for food service, although, Sims does state in his Civil Rights Complaint that he has "moles and warts that bleed." *Doc 1* at 3; *see also Ex. C*. The ACA Standards at LCCF state that "Medical Staff are responsible for updating an Inmate's Health Summary for Classification providing appropriate notification with respect to any changes in an Inmate's health status, which requires a job change for health related reasons." *Ex. F* at 2. The ACA Standards also state that "Job restrictions and recommendations of Medical Staff will be followed by all Classification Committees, Classification staff and Security Staff." *Id*. On September 28, 2005, Sims was removed from his job assignment in food services. *See Ex. M*.

Not knowing that he would soon be removed from food services, on September 27, 2005, Sims filed an informal complaint addressing Villanueva's denial of his request to transfer out of food services. *See Ex. N*. In the informal complaint, Sims stated that Villanueva allows "personal conflict to interfere" with her job performance and that she "must be replaced with a more appropriate person." *Id.* In response to the informal complaint, Villanueva drafted a detailed memorandum to Major Horton discussing her encounters with Sims and her fears of being

4

attacked by him. *See Exs. O, P*. After reviewing Villanueva's memorandum and the informal complaint, Major Horton, in a written response, recommended a resolution. *See Ex. N*. In his response, Major Horton noted that all jobs are approved or denied by Major Horton and Warden Choate and that Sims was not to have any further contact with Villanueva. *Id*. Captain Brodie approved Major Horton's written response and disposition. *Id*.

On September 30, 2005, Captain Brodie initiated a disciplinary action against Sims for his conduct toward Villanueva. *See Ex. Q*. Sims was charged with the major level offense of making threats, and the minor level offenses of presence in an unauthorized area, verbal abuse or gesture, and disobeying a lawful order. *Id*. Sims was placed in pre-hearing detention because, pursuant to CD-909191, ¶E.2, he received a misconduct report and posed a threat to the security of the institution, public, other inmates, staff or others. *See Doc. 1*, Ex. C at 13. Following an investigation and hearing, Sims was found guilty of the verbal abuse and gestures charge for swearing at Villanueva on September 20, 2005. *See Ex. R*. The recommended sanction of fourteen days commissary and visitation restriction was approved by Warden Choate. *Id*. Sims's appeals to Warden Janecka and the Secretary of Corrections were both denied. *See Exs. S, T*.

Sims did not file a formal grievance against Villanueva until November 7, 2005. *See Ex. V*. His grievance alleged he was wrongfully placed in pre-hearing detention and that Villanueva denied him jobs, made false allegations against him, and retaliated against him for (i) refusing to communicate with her and instead communicating with Major Horton, (ii) not accepting her judgment, and (iii) going above her authority. *Id*. Sims's grievance was denied on December 7, 2005. *Id*. Sims appealed, and his appeal was denied on January 30, 2006. *Id*.

**Summary Judgment Standard**

The Court may grant summary judgement, under Rule 56(c) of the Federal Rules of Civil Procedure, if the pleadings, depositions, answers to interrogatories and admissions or affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The opposing party must be given notice and an opportunity to respond, as provided in Rule 56.  *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

The Correctional Facility Defendants carry the burden of establishing that there is no genuine issue of material fact for trial.  These Defendants may satisfy the burden by showing an absence of evidence to support Sims's claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movants meet their burden, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on a material matter.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  The party opposing the motion may not rest on pleadings, mere argument, or contention but must set forth specific facts through admissible evidence, showing there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof.  If he cannot make such a showing, summary judgment is appropriate.  *See Celotex*, 477 U.S. at 324.

However, the nonmovant's burden to respond arises only where the summary judgment motion is properly "supported."  *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).

> Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c).  If the evidence produced in support of the summary judgment motion does not meet this burden, summary judgment must be denied, *even if no evidentiary matter is presented*.

*Id*. (emphasis in original) (internal citation omitted).  Thus, the Court must decide whether the

Correctional Facility Defendants have met their initial burden of demonstrating that no material issues of fact remain for trial. *Id*. Here, the Court determines that the Correctional Facility Defendants have met their initial burden, and that Sims has not demonstrated that there is a genuine issue for trial on a material matter. Therefore, summary judgment should be granted.

## Analysis

I. Retaliation

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights, including his right of access to courts." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). In *Peterson*, the Tenth Circuit noted:

> This principle applies even where the action taken in retaliation would be otherwise permissible. As the Supreme Court made clear . . . however, it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role. Obviously, an inmate is not inoculated from the normal conditions of confinement experience by convicted felons serving time in prison merely because he has engaged in protected activity. Accordingly, a plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place. An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.

*Peterson*, 149 F.3d at 1144 (citations and quotations omitted). *See also Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990) ("Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.")

In their Motion for Summary Judgment, the Correctional Facility Defendants initially

argue that by filing an informal complaint or grievance against Villanueva, Sims did not engage in protected constitutional activity. *See Doc. 23* at 9-10. In support, they cite *Fogle v. Pierson*, which states:

> Though it is not entirely clear from the pleadings, Fogle's complaints could be referring to internal prison appeals and/or formal grievances to prison officials. Several circuits have held that a prisoner's first amendment right to petition the government for redress of grievances encompasses the filing of inmate administrative appeals. Moreover, Fogle specifically alleges that the retaliation was a direct result of his protestations. Thus there is an arguable basis for this claim; if in fact DOC officials retaliated against Fogle based on his filing administrative grievances, they may be liable for a violation of his constitutional rights.

435 F.3d 1252, 1264 (10th Cir. 2006) (citations and quotations omitted). *Fogle* does not provide definitive guidance. If anything, the case does not bode well with the Correctional Facility Defendants' contention that Sims did not engage in protected constitutional activity. However, I find it unnecessary to decide whether Sims has engaged in protected constitutional activity because, as explained below, the record clearly indicates that the actions Sims complains of were not the product of a retaliatory motive.

    A.  Job Loss Without Cause

Sims alleges that the Correctional Facility Defendants retaliated against him for filing his informal complaint by removing him from his job in food services without cause. "The Constitution does not create a property or liberty interest in prison employment." *Ingram v. Papalia*, 804 F.2d 595, 596-597 (10th Cir. 1986); *see also Templeman v. Gunter*, 16 F.3d 367, 370 (10th Cir.1994). However, even if it did, the record indicates that Sims lost his job because he was no longer medically cleared to work in food services. In removing Sims from food services, the Correctional Facility Defendants adhered to LCCF's ACA Standards. Because Sims

has not alleged any specific facts that show he lost his job for any other reason but for his medical condition, I find his allegation to be without merit.

    B.  Denied Jobs or Job Changes by Villanueva Without Cause or Reason

Sims's allegation that the Correctional Facility Defendants retaliated against him by denying him jobs or job changes is also without merit. Sims's job denials or job change denials all occurred before Sims filed his informal complaint or his formal grievance. Therefore, Sims simply cannot show that but for a retaliatory motive the job denials or job changes would not have taken place.[3]

    C.  Subject of Disciplinary Action

Sims also alleges that because he filed an informal complaint against Villanueva, the Correctional Facility Defendants retaliated against him by subjecting him to disciplinary charges. Again, here, the record clearly demonstrates that Sims was disciplined because of his misconduct toward Villanueva and not because he filed an informal complaint. Sims does not provide any evidence that he did not verbally abuse Villanueva. To the contrary, the record contains factual support that he did, and that on numerous occasions he intimated Villanueva, causing her to fear being attacked by him. Sims has not raised a genuine issue of material fact that the Correctional Facility Defendants acted with the required retaliatory motive. Thus, this retaliation claim cannot survive.

    D.  Segregation

Sims alleges that because he filed an informal complaint against Villanueva, the

---

[3] In addition, the record clearly shows that Sims was denied jobs or job changes for cause. Initially, Sims was not placed in food service because he was not medically cleared. Later, he was denied a transfer out of food service because he was not available for voluntary reassignment until he had worked there for ninety days.

Correctional Facility Defendants retaliated against him by improperly placing him in pre-hearing detention. Here, the record indicates that Sims was placed in pre-hearing detention pursuant to prisoner regulations because a disciplinary action had been filed against him and he was a threat to the safety of Villanueva. Therefore, Sims cannot show that the filing of his informal complaint was the "but for" cause of his segregation. Accordingly, this claim of retaliation cannot survive.

## II.  Negligence

In his Civil Rights Complaint, under the background section, Sims states that he "seeks to allege the torts[sic] of negligence of the defendants." *Doc. 1* at 2. Besides this reference, his Civil Rights Complaint, his amended complaint, and his response to the Correctional Facility Defendants' Motion for Summary Judgment make no reference to the negligence claim. *See Docs. 1, 18, 30*.

In order to prove negligence, a prima facie case must be met. The elements of negligence are duty, breach of duty, proximate cause, and damages. *See Lopez v. Maez*, 98 N.M. 625, 630 651 P.2d 1269, 1274 (1982); *see also Tafoya v. Seay Bros. Corp,* 119 N.M. 350, 352, 890 P.2d 803, 805 (1995). A breach of duty is a failure to conform to an obligation, recognized by the law, "requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Id*. "'Proximate cause' is that which in a natural and continuous sequence . . . produces the injury and without which [the] injury would not have occurred.'" *Id*. at 1275 (quoting *Chavira v. Carnahan*, 77 N.M. 467, 469, 423 P.2d 988, 990 (1967)).

In their Motion for Summary Judgment, the Correctional Facility Defendants argue that the record adequately demonstrates that Sims cannot prove a prima facie case because Defendants did not breach any duty owed to Sims, and that any purported breach was not the proximate

cause of Sims's injuries. The Court agrees. The Correctional Facility Defendants have met their initial burden of demonstrating that no material issue of fact remains for trial. Because Sims has not produced any evidence creating a genuine issue of material fact that would preclude summary judgment, I recommend that summary judgment be granted.

Wherefore,

IT IS HEREBY RECOMMENDED THAT:

1) the Correctional Facility Defendants' Motion for Summary Judgment (*Doc. 23*) be granted;

2) Sims's retaliation and negligence claims against the Correctional Facility Defendants be dismissed with prejudice; and

3) Defendants Villanueva, Horton, and Brodie be dismissed as parties to this action.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE